IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 15-16334 |
| Curtis and Portia Gilmore ) | |
| ) | JUDGE  Cox |
| Debtor ) | |
| ) | CHAPTER 13 |

**DEBTORS' RESPONSE TO GOTHIC INVESTMENT LTD'S MOTION TO ANNUL AND/OR MODIFY THE AUTOMATIC STAY**

NOW COME, Debtors, by and through their attorneys, Swanson & Desai, LLC, and responds as follows:

**STATEMENT OF FACTS**

Curtis and Portia Gilmore (Debtors) filed for Chapter 13 bankruptcy protection on May 7, 2015.  The primary purpose behind the filing was to protect the real property located at 1525 W. 91st Street, Chicago, IL, 60620 (the property).   The factual allegations in paragraphs 1 through 16 of Gothic Investment LTD's (Movant) motion are accurate.

Further, Zebedee Doyle and Mattie Doyle were the parents of Portia Gilmore.  Mattie Doyle passed away on July 1, 2001 and Zebedee Doyle passed away May 28, 2003.  Portia Gilmore is the daughter of Zebedee and Mattie Doyle, and immediately acquired her ownership interest in the property after her father died intestate.[1]

Concurrently with this response, the Debtors will be filing a motion to modify their confirmed plan to list the correct claimant, outstanding debt, and interest rate in Section E 3.1(c) of the plan.

As of the date of this response, the Debtors are substantially current with payments required under section D1 of the plan.  Those payments are being made through the payroll

---

[1] This has addressed the issue regarding ownership in *In re Flores,* 345 B.R. 615 (Bankr. N.D.Ill. 2006)

1

control order that was entered by this Court on June 12, 2015.  Additionally, the Debtors will tender certified funds to their counsel in the amount of $1,166.00 to pay the second installment of 2014 taxes advanced by movant post-petition. These funds will be available to tender to Movant at the next scheduled hearing.

**ARGUMENT**

I. **GOTHIC INVESTMENTS LTD  IS A CREDITOR IN DEBTORS' BANKRUPTCY AND HOLDS A CLAIM THAT CAN BE SATISFIED IN THIS BANKRUPTCY CASE**

A. **Gothic is a "creditor" with a claim.**

As the purchaser of property taxes due and owing on Debtors' real property, Movant has an *in rem* right against the property, and as such, is a "creditor" with a "claim" in this bankruptcy.  Debtor filed a Chapter 13 bankruptcy prior to the expiration of the redemption period.  Therefore, the claim can be satisfied through the Chapter 13 plan.

As of the date of filing of the bankruptcy, Debtors hold, and continue to hold, a fee interest in the Property.  Movant, on the other hand, may hold "something less than title in fee." *Petition of Conrad Gacki Profit Sharing Fund*, 261 Ill.App.3rd 982, 984 (Ill.App.Ct. 1994).

Movant, in an effort to take title to the property, asserts in Paragraph 18 of its motion, that Debtors have no ownership interest in the property.  In making such an assertion, it seems Movant is arguing that Debtors were required to redeem the taxes prior to the expiration of the period of redemption.  However, Debtor is not using the bankruptcy to redeem the taxes; but rather, they are satisfying an existing secured claim through their Chapter 13 plan.

The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101 (10)(A) (2015).  A claim is defined by the code as a "right to payment, whether or not such right

2

is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;" or as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A)-(B) (2015).

The Supreme Court explained that Congress adopted the "broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). In broadly defining the word "claim," Congress contemplated that all legal obligations of a debtor would be dealt with in a bankruptcy case. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990). *In rem* rights that are enforceable against a debtor's property are among the legal obligations dealt with in a bankruptcy case. *In re Commings,* 297 B.R. 701, 707 (Bankr. N.D. Ill. 2003). The *Commings* Court applied the Supreme Court's expansive definition of the term "claim" and held "possession of an *in rem* right against property owned by a debtor in a bankruptcy case gives the tax purchaser a 'claim' in the bankruptcy." *Id.* at 707. "The tax purchaser holds a claim against the debtors that may be treated in bankruptcy." *In re LaMont*, 740 F.3d 397, 409 (7th Cir. 2014).

In the instant case, the Seventh Circuit in *LaMont* has made it clear, relying on the reasoning in *Johnson,* Movant has an *in rem* right against Debtors' property. Accordingly, Movant is a creditor in this bankruptcy with a claim against Debtors that can be paid through their plan of reorganization.

### B. Gothic's claim can be satisfied through the Chapter 13 Plan.

3

"As long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case, through sale of the collateral in Chapter 7 or plan treatment in Chapter 13 – even though the redemption period expires during the pendency of the case." *In re Bates*, 270 B.R. 455, 467 (Bankr. N.D. Ill. 2001). Movant's claim is a secured claim that may treated in the Chapter 13 Plan. *Lamont* at 409. "How a Chapter 13 plan operates in the tax sale context has been correctly explained by *In re Bates*." *Id.*

It is undisputed that Debtors filed for relief prior to the expiration of the redemption period. Debtors' petition was filed May 7, 2015, forty-one (41) days before the redemption period expiration of June 17, 2015. Because Debtors filed their bankruptcy petition prior to the expiration of the redemption period, Movant's claim can be treated through the Chapter 13 plan, even though the redemption period expired after the filing of the petition.

## II. DEBTORS ARE SATISFYING A SECURED CLAIM THROUGH THEIR CHAPTER 13 PLAN, NOT EXERCISING A RIGHT TO REDEEM, AND AS SUCH, IS NOT LIMITED BY SECTION 108 (b).

### A. Section 108 (b) does not limit Debtor's right to modify the claim asserted by Movant.

Movant, at Paragraph 18 of its motion, makes a blanket assertion that the Debtors have no ownership interest in the subject property. It appears Movant may be arguing that pursuant to § 108(b), Debtor was only able to redeem from the tax sale on or before July 6, 2015. In doing so, Movant would be asking this court to construe § 108(b) as a limit to Debtors' ability to protect the real estate. If this were the assertion of Movant, Movant misinterprets both the purpose and language of §108(b); as expressed by the Seventh Circuit, §108(b) operates to preserve a debtor's rights by granting an extension of time, not to restrict a debtor's rights. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984). Section 108(b), therefore, takes

4

on a major role in liquidation proceedings, but is of minor importance in reorganization proceedings, which allow debtors to modify the rights of their creditors. *In re McKinney*, 341 B.R. 892, 901 (Bankr. C.D. Ill. 2006).

"Section 108(b) must be viewed in light of and in comparison with the broad powers to modify claims accorded Chapter 13 debtors as well as the predominant policy of Chapter 13 to afford debtors the opportunity to save their residential real estate." *Id.* at 902. *McKinney* held that the claim of a tax purchaser may be modified in a Chapter 13 plan, and Section 108(b) does not affect a debtor's power to modify the claim in that manner. *Id.* Furthermore, the court looked to a historical analysis of the purpose and function of § 108(b), reaching the conclusion that a constrictive interpretation of Section 108(b), such as the one proposed by Waters, suffers from fundamental flaws. *Id.* at 899.

> As explained by the *McKinney* court,
>
>> In order to understand why that view is erroneous, it is helpful to review how the issue was dealt with under the Bankruptcy Act. Under the Act, it was accepted that the provision for an extension of time which was the predecessor to Section 108(b) did not undermine a debtor's ability to reorganize. . . .
>>
>> The [second] sentence of Section 11(e) of the Act, added in 1938, was intended to allow the trustee or receiver extra time to take any necessary steps to preserve for the estate, rights which might otherwise be lost…In general, Section 11(e) was characterized as extending the time for taking a 'procedural step.'
>>
>> Section 11(e) did not operate to cut off a trustee's or debtor's ability, in a reorganization case, to pay a secured claim in a plan notwithstanding postpetition expiration of a state law redemption period. . . .
>>
>> "In straight bankruptcy, where the ultimate purpose is liquidation of the estate, §11 provides a beneficial grace period – a grant of extra time within which to take action. In chapter X, where the purpose is rehabilitation of a going business, a period of grace is not needed. The Act itself provides all the time required. The

5

> second sentence of § 11(e), then, when applied to chapter X, converts itself into a drastic limitation upon the power of the court to protect the property of the debtor in the manner contemplated by and for the purposes of the Act." *Id*. At 899 – 900.

As the *McKinney* court explains, interpreting § 108(b) as a strict, bright-line limit to § 1322(b)(2) "undermines the effect of other provisions of the Code designed to help debtors save their homes…While section 108 (b) might well govern the right of a trustee to redeem in such a situation, there is no reason to conclude automatically that it overrides the other provisions of the Code which allow debtors' plans to cure defaults or modify creditors' rights." *McKinney* at 901. A debtor can propose a plan modifying a tax purchaser's secured claim not because §1322(b)(2) supersedes § 108(b), but instead because such a plan makes § 108(b) irrelevant. *Id.* As such, § 108(b) does not limit the rights of a Chapter 13 debtor, including the right to modify claims under § 1322(b)(2). *Id.* at 901-2. The purpose of § 108(b), when it applies, is to allow debtors and trustees additional time to redeem, when the only interest the bankruptcy estate possesses is a right of redemption.

Although courts in this District have not agreed completely upon whether § 108(b) restricts a debtor's rights under § 1322(b)(2), the current trend in this district maintains that it does not. *See Bates*, 270 B.R. at 467. *See also In re Kasco*, 378 B.R. 207, 214 (Bankr. N.D. Ill. 2007); *McKinney,* 341 B.R. at 902 (All holding that § 108 (b) does not restrict the debtor's use of § 1322(b)(2) to pay sold property tax debt as a secured claim in a Chapter 13 plan). *But see Murray*, 276 B.R. at 877 (holding that the debtor was limited to extension provided by § 108(b) to redeem the taxes).

Further, while the *LaMont* Court did not specifically address a § 108(b) analysis, *LaMont* made explicitly clear that the analysis of *Bates* was the correct analysis when analyzing a Chapter 13 plan's treatment of sold property taxes. *Lamont* at 409. As such, Debtors are

6

permitted to treat the Movant's claim through their Chapter 13 Plan, through modification of the claim pursuant to § 1322(b)(2) and providing Debtors an opportunity to pay the property taxes as a secured claim while they reorganize their debts through their Chapter 13 plan.

> **B. Debtors are paying a Movant's secured claim through the Chapter 13 plan, not exercising a right to redeem. Scheduling the County rather than the Movant does not bar treatment.**

Movant requests this Court modify or annul the automatic stay because Debtors scheduled the Cook County Clerk rather than Movant.

In *Kasco*, the debtors filed their Chapter 13 bankruptcy petition prior to the expiration of the redemption period for their 2002 property taxes. *Kasco* at 209. Rather than naming Diamond Quest as a creditor, the Kascos scheduled the Cook County Collector as a secured creditor and included a provision in their plan for payment of the tax debt to the Cook County Collector. *Id.* Diamond Quest, the purchaser of the taxes, did not receive notice of the bankruptcy and the plan was confirmed. *Id.* Subsequently, Diamond Quest moved for relief from the automatic stay. *Kasco* at 209. The court denied their motion and held the tax purchaser is a creditor in the bankruptcy with a claim that can be paid through the Chapter 13 plan, even though the tax debt was not paid in full prior to the expiration of the redemption period. *Id.* at 214.

Similarly, in the instant case, Debtors filed their petition prior to the expiration of the redemption period, and noticed the Cook County Clerk, not Movant. They scheduled the Cook County Clerk as a secured creditor and included a provision in their plan for payment of the tax debt. It appears Movant is asking this Court to modify or annul the automatic stay so it may obtain Debtors' real property as no redemption was effectuated within the redemption period or

7

within the 60-day period after the order for relief. As held in *LaMont,* this position is incorrect. *Lamont* at 409.

Additionally, in *LaMont,* the Clerk of Cook County appeared as amicus, asserting that his office was unable to accept payment of redemption amounts in installments. *Id.* at 410. The *LaMont* Court found this fact to be insignificant, as the plan could treat the tax purchaser directly. *Id.*

Just as in *Kasco*, the Debtors scheduled the County entity, rather than the purchaser. The Debtors are filing a motion to modify the plan to not only provide the correct amount of the pre-petition claim, but also to replace Cook County Clerk with Movant as the payee.

### C. The automatic stay applies.

Movant requests this Court modify or annul the automatic stay as they had no notice of the bankruptcy proceeding. "Alexandrov's attempt to obtain a tax deed is an act to obtain possession of property of the estate and to enforce his lien for taxes. It is therefore properly forbidden by the stay." *Lamont* at 410. While annulling the stay would resolve the issue from Movant's perspective, there are no grounds to warrant annulment. The Debtors will tender funds to counsel for Movant to pay the first post-petition installment, will continue to make the post-petition tax payments, and have insurance on the property to protect Movant's secured claim.

### CONCLUSION

For the reasons set forth above, Debtors respectfully requests that the Court deny Movant's motion to modify or annul the automatic stay.

Respectfully submitted,

___/s/ Nicholas Perino_____

Swanson & Desai, LLC
Attorneys for the Debtors

8

670 W. Hubbard Street
Suite 270
Chicago, IL 60654
312-850-3325